IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | 1:17CR154(1) |
| v. | § | Judge Marcia Crone |
| | § | |
| ERIC PAUL COLEMAN (1) | § | |
| | § | |

## FACTUAL BASIS AND STIPULATION

The United States of America, presents to the Court, by and through the undersigned Assistant United States Attorney in and for the Eastern District of Texas, joined by the defendant, **Eric Paul Coleman** and the defendant's attorney **Ryan Gertz**, and presents this factual basis and stipulation in support of the defendant's plea of guilty to Counts One, Three, Six, and Eight of the third superseding indictment, and in support thereof, would show the following:

1. That the defendant hereby stipulates and agrees to the truth of all matters set forth in this factual basis and stipulation, and agrees that such admission may be used by the Court in support of his plea of guilty to:

   - Count One of the third superseding indictment, which charges a violation of 21 U.S.C. § 846, conspiracy to possess with the intent to distribute a controlled substance, namely 280 gram or more of cocaine base a.k.a. "crack" cocaine;

   - Count Three of the third superseding indictment, which charges a violation of 18 U.S.C. § 1956(h), conspiracy to launder monetary instruments;

- Count Six of the third superseding indictment, which charges a violation of 18 U.S.C. § 924(c), possessing a firearm in furtherance of a drug trafficking offense; and

- Count Eight of the third superseding indictment, which charges a violation of 18 U.S.C. §§ 844(h)(1) and 2, use of fire to commit a federal felony — aiding and abetting.

2. That the defendant, who is pleading guilty to such indictment, is one and the same person charged in the indictment.

3. That the events described in the third superseding indictment occurred in the Eastern District of Texas and elsewhere.

4. That had this matter proceeded to trial, the government, through the testimony of witnesses, including expert witnesses, and through admissible exhibits, would have proven, beyond a reasonable doubt, each and every essential element of the offense alleged in the third superseding indictment; specifically, the government would have proven the following stipulated facts:

   a. Since at least December 2012, **Eric Paul Coleman** had supervised, managed and controlled a drug trafficking organization that distributed and manufactured cocaine base a.k.a. crack cocaine in the Beaumont, Texas, area. The Coleman DTO also distributed cocaine HCL that it received from a supplier in Houston, Texas.

   b. As part of an agreement to distribute cocaine base in the Beaumont area, **Eric Paul Coleman** organized and was the leader of the Coleman DTO. As the leader of the Coleman DTO, **Eric Paul Coleman** supervised and organized the following individuals: **Minnie Coleman, Christopher Dudley, Clayton Howard, Jordan Marshall, Arthur Jenkins, Patrice Stoker, Jason Wright, Lee Roy Hills,** and **Ivy Chatman.**

c. On **Eric Paul Coleman's** behalf, **Christopher Dudley** and **Clayton Howard** traveled to Houston to purchase and then return to Beaumont with cocaine HCL. From December 2012 until December 2017, **Eric Paul Coleman, Christopher Dudley**, and **Clayton Howard** agreed to possess with the intent to distribute 597 grams of cocaine base and 6 kilograms of cocaine HCL.

d. Some of the cocaine HCL was sold in its powder form. **Eric Paul Coleman, Minnie Coleman, Jordan Marshall**, and **Lee Roy Hills** assisted in converting the cocaine HCL received from **Christopher Dudley** and **Clayton Howard** into cocaine base that the Coleman DTO distributed in Beaumont, Texas. This was done at a home belonging to Minnie Coleman at 3375 Paris Street in Beaumont. **Eric Paul Coleman** with assistance from **Jordan Marshall**, and **Lee Roy Hills** caused cocaine HCL to be converted into cocaine base at homes **Eric Paul Coleman** owned at 8520 Lawrence Drive, Beaumont, Texas, a.k.a. "The Field" as well as 5795 Stanford Drive, where **Eric Paul Coleman** and **Patrice Stoker** resided as of December 2017. **Eric Paul Coleman** owned 8520 Lawrence Drive for the purpose of manufacturing and distributing cocaine base and cocaine HCL.

MONEY LAUNDERING

e. **Eric Paul Coleman, Minnie Coleman,** and **Patrice Stoker,** aiding and abetting each other and others unknown, agreed to put the proceeds of the Coleman DTO's cocaine base and cocaine HCL sales into the financial system. Minnie Coleman agreed to allow Eric Paul Coleman to store what she knew to be drug proceeds at her home, which aided the Coleman DTO by having a safe place to United States Currency. Patrice Stoker agreed and did take cocaine base and cocaine HCL proceeds and deposit them into an account **Eric Paul Coleman** had at Wells Fargo Bank and into an account **Patrice Stoker** controlled at Education First Credit Union. Because Eric Paul Coleman has no legitimate source of income and makes a livelihood from selling illegal narcotics, having the cocaine base and cocaine HCL proceeds deposited in a bank concealed the nature and source of the proceeds. By agreeing and aiding and abetting the agreement to have **Patrice Stoker** deposit cocaine base and cocaine HCL proceeds to into her credit union account, **Eric Paul Coleman, Minnie Coleman,** and **Patrice Stoker** attempted to conceal the source of these cocaine base and cocaine HCL proceeds.

CONSPIRACY: POSSESSION OF FIREARMS IN FURTHERANCE OF THE DRUG
TRAFFICKING

f.  In the course of disturbing cocaine base and cocaine HCL in the Beaumont,
    Texas, area **Eric Paul Coleman**, **Jordan Marshall**, **Arthur Jenkins**, and
    **Lee Roy Hills** possessed and agreed to possess firearms to assist their
    cocaine base trafficking.

g.  On August 20, 2017, **Lee Roy Hills** called **Eric Paul Coleman** about rival
    distributors assaulting a member of the Coleman DTO. **Eric Paul
    Coleman** told **Lee Roy Hills** that he had a Kel-Tec firearm that **Lee Roy
    Hills** could use to respond to the assault. **Lee Roy Hills** declined and said
    he had .40-caliber weapon of his own. During a December 1, 2017, search
    warrant of a white BMW, Texas License Plate JGV-2686, which **Eric Paul
    Coleman** used to deliver cocaine base and cocaine HCL, police recovered a
    Kel-Tec firearm. This agreement to possess the firearm was in furtherance
    of the Coleman DTO's cocaine base and cocaine HCL distribution.

h.  On August 18, 2018, **Arthur Jenkins** called **Eric Paul Coleman** about a
    **Eric Paul Coleman's** request for Arthur Jenkins to "put someone on their
    [rear end]" for the Coleman DTO. **Arthur Jenkins** responded he was
    "strapped and ready" to engage in the assault **Eric Paul Coleman** had
    requested. They also discussed a 2-gram cocaine HCL. To prevent
    violence from occurring, Beaumont police stopped **Arthur Jenkins** and
    recovered 2 grams of cocaine HCL from **Arthur Jenkins.**

i.  On November 3, 2017, **Eric Paul Coleman** called **Arthur Jenkins** to
    request **Arthur Jenkins** assault by punching a Coleman DTO customer
    who had not repaid a debt. **Eric Paul Coleman** and **Arthur Jenkins** agreed
    that **Eric Paul Coleman** would **Arthur Jenkins** $250 for committing the
    assault. Police notified the customer to ensure the customer's safety. The
    customer called **Eric Paul Coleman** and asked if there was a way to work
    off the debt to avoid being assaulted. **Eric Paul Coleman** told the
    customer there was nothing he could do because he already paid someone
    to commit the assault.

j.  On November 28, 2017, **Eric Paul Coleman** called **Arthur Jenkins** to
    request **Arthur Jenkins** murder and unknown individual. **Arthur
    Jenkins** initially thought the call was about a drug delivery but **Eric Paul
    Coleman** told **Arthur Jenkins** that it was other work and he was willing to

pay $2,000. **Arthur Jenkins** asked **Eric Paul Coleman,** "You want them dead?" **Eric Paul Coleman** said, "Yes." Later in the phone call, **Eric Paul Coleman** gave specific instructions about how he wanted the murder to proceed. **Eric Paul Coleman** said he would provide **Arthur Jenkins** with a car and told **Arthur Jenkins** to shoot the victims through the side of the victims' car and not through the front in case the victims ducked during the shooting. This agreement to use a firearm was in furtherance of **Eric Paul Coleman's** and the Coleman DTO's trafficking of cocaine base and cocaine HCL.

11/10/2017: POSSESSION OF FIREARMS IN FURTHERANCE OF DRUG TRAFFICKING

k. On November 12, 2017, in session 22426 at 11:33 a.m., **Eric Paul Coleman** received a call about a rival drug trafficking organization disputing distribution territory with the Coleman DTO. The caller told **Eric Paul Coleman** someone on Magnolia said, "They were trying to steal their game," and "Let me know when they pull up so I can pull out. I ain't getting caught in no crossfire." In session 22427 at 11:35 a.m., **Eric Paul Coleman** called a Coleman DTO associate and said, "They think we sent somebody to steal their game or some sh\*\*. So they are talking reckless. So we are going to pull up. I am going to grab my burner (meaning firearm) real quick. I am trying to get in touch with Sporty (**Lee Roy Hills**)." After the calls, **Eric Paul Coleman** drove with **Jordan Marshall** as the passenger in the car to address the dispute. Before they drove, they carried into the car and possessed while in transit: 1) a Glock 17 9-millimeter semi-automatic pistol bearing serial number BBDR260; 2) a Taurus Millenium G2 9-millileter semi-automatic pistol, bearing serial number TJU86548; and 3) a Smith and Wesson SW40VE .40-caliber semi-automatic pistol, bearing serial number DYJ3511. As a police vehicle followed **Eric Paul Coleman's** car, **Eric Paul Coleman** and Jordan Marshall threw the weapons out of the car windows before police stopped **Eric Paul Coleman's** car. Police recovered the firearms. In phone calls after the incident, **Eric Paul Coleman** described the firearms he and **Jordan Marshall** threw from **Eric Paul Coleman's** car. Carrying the firearms allowed **Eric Paul Coleman** and **Jordan Marshall** to protect drug distribution territory, instill fear in a rival, and protect themselves from force a rival might use, which aided Coleman DTO's cocaine base and cocaine HCL distribution.

ARSONS

l. **Eric Paul Coleman** also caused and agreed to cause vehicle fires to occur in furtherance of the Coleman DTO's cocaine base distribution. On October 25, 2016, **Eric Paul Coleman** directed a Coleman DTO associate to burn the vehicle of another Coleman DTO associate who **Eric Paul Coleman** believed stole cocaine base from him. The victim saw his car was burned outside of his home and provided fire investigators a video that showed a person approaching the car, breaking out a window, pouring something inside, and then lighting the inside of the vehicle on fire. During a phone call on October 27, 2017, **Eric Paul Coleman** said, "I lent the ni\*\*\*r two softballs, and he chose not to pay me. His car caught on fire."

m. On October 22, 2017, **Ivy Chatman** called **Eric Paul Coleman** and asked if one of **Eric Paul Coleman's** associated could blow up an individual's car. **Eric Paul Coleman** agreed to have an associate do the requested arson. **Ivy Chatman** had previously sold **Eric Paul Coleman** cocaine base. Police notified the potential victim after the call, and no fire occurred.

## THE SOURCES

n. On September 6, 2017, during call sessions 9612, 9613, **Eric Paul Coleman** asked **Christopher Charles Dudley** to get him 2 kilograms of cocaine HCL from a source of supply. September 7, 2017, during call session 10157, **Eric Paul Coleman** asked **Christopher Charles Dudley** to deliver the 2 kilograms of cocaine HCL Minnie Coleman's home at 3375 Paris Street, Beaumont, Texas.

o. On October 21, 2017, during call sessions 13555 and 13556, **Eric Paul Coleman** discussed giving **Christopher Charles Dudley** $20,000, so **Christopher Charles Dudley** can get 1 kilogram of cocaine HCL from the source of supply to give to **Eric Paul Coleman.** After the calls, they met at a carwash, where **Eric Paul Coleman** took a bag from his car bag that contained at least $20,000 in United States currency and placed the bag in **Christopher Charles Dudley's truck. Christopher Charles Dudley** then drove away with the currency that was used to purchase cocaine HCL.

p. On October 27, 2017, during call session, 15770, **Eric Paul Coleman** called **Christopher Charles Dudley** and asks him to spot an ounce of cocaine HCL. **Christopher Charles** Dudley agreed to do so.

q. On October 28, 2017, during call session, 16205, **Eric Paul Coleman**

called **Christopher Charles Dudley** and said he paid the source $1,000 and has $26,000, which is the price of 1 kilogram of cocaine HCL from their source.

r. On November 1, 2017, during call session, 17811, **Eric Paul Coleman** calls **Christopher Charles Dudley** and asked what he owed the source. **Christopher Charles Dudley** said $30,000, from multiple sales of kilograms of cocaine HCL.

s. On November 7, 2017, during call session, 20735, **Eric Paul Coleman called Christopher Charles Dudley** and asked what he owed the source charged. **Christopher Charles Dudley** said $26,000 for 1 kilogram of cocaine HCL.

t. On November 28, 2017, on behalf of **Eric Paul Coleman**, Clayton Howard drove with Christopher Dudley in Christopher Dudley's truck to pick up two kilograms of cocaine HCL from a source in Houston, Texas. On Interstate 10, Beaumont Police Department detectives saw a tan Chevrolet 1500 pickup truck following an 18-wheeler at an unsafe distance. They pulled out to and activated emergency lights, signaling the truck to stop. **Clayton Devon Howard**, the driver, failed to stop. He began driving recklessly at a speed that reached over 100 miles per hour in a 65 mph zone, attempting to evade the detectives in the process. **Clayton Devon Howard** weaved around semi-trucks and nearly struck other vehicles on the road as well. During the pursuit, the passenger, **Christopher Charles Dudley**, threw two (2) large bundles being thrown out of the passenger side window of the truck. The bundles were two, 1-kilogram packages of cocaine HCL that **Clayton Devon Howard** and **Christopher Charles Dudley** were suppling **Eric Paul Coleman**.

u. From December 2012 through December 2017, **Eric Paul Coleman** agreed with at least one other person to possess with intent to distribute at least 597 grams of cocaine base and at least 6 kilograms of cocaine HCL.

## DEFENDANT'S SIGNATURE AND ACKNOWLEDGMENT

6. I have read this factual basis and stipulation and the third superseding indictment or have had them read to me and have discussed them with my attorney. I fully understand the contents of this factual basis and stipulation and agree without

reservation that the United States can prove each of these acts and that it accurately describes the events about my acts and the events as recited as I know them.

Dated: ___8/10/18___    *Eric Cole*
ERIC PAUL COLEMAN
Defendant

## DEFENSE COUNSEL'S SIGNATURE AND ACKNOWLEDGMENT

7.      I have read this factual basis and stipulation and the third superseding indictment and have reviewed them with my client, **Eric Paul Coleman**.    Based upon my discussions with the defendant, I am satisfied that the defendant understands the factual basis and stipulation as well as the indictment, and is knowingly and voluntarily agreeing to these stipulated facts.

Dated: ___8/10/18___    _____
RYAN GERTZ
Attorney for the Defendant

Respectfully submitted,

JOSEPH D. BROWN
UNITED STATES ATTORNEY

_____
CHRISTOPHER RAPP
Assistant United States Attorney
Eastern District of Texas
350 Magnolia, Suite 150

**Factual Basis and Stipulation – Page 8**

Beaumont, Texas 77701
(409) 839-2538
(409) 839-2550 Fax
Arizona Bar No. 025704